**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 14 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PALLADIUM MUSIC, INC.,

      Plaintiff - Appellant -
      Cross-Appellee,

      v.

EATSLEEPMUSIC, INC., and
TENNESSEE PRODUCTION
CENTER, INC., d/b/a
CHARTBUSTER KARAOKE,

      Defendants - Appellees -
      Cross-Appellants.

Nos. 04-6061, 04-6097

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-03-206-A)**

Philip O. Watts (Beverley Q. Watts, with him on the briefs), Watts & Watts,
Oklahoma City, OK, for Plaintiff - Appellant - Cross-Appellee.

R. Bradford Brittian, Melinda L. Doss, Raymond E. Stephens, and Morgan L.
Fitch IV, on the briefs, Pitts & Brittian, P.C., Knoxville, TN, for Defendants -
Appellees - Cross-Appellants.

Before **SEYMOUR** , and **HOLLOWAY** , and **BRISCOE,** Circuit Judges.

**BRISCOE** , Circuit Judge.

Plaintiff, Palladium Music, Inc., (Palladium) appeals the district court's grant of summary judgment in favor of defendants, EatSleepMusic Inc., (ESM) and Tennessee Production Center, Inc., d/b/a Chartbuster Karaoke (TPC) in a copyright infringement action brought pursuant to 28 U.S.C. § 1338(a). ESM and TPC cross-appeal the district court's denial of their motion for attorneys fees, requested under 17 U.S.C. § 505. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and affirms.

## I.

Since 1996, Palladium has been in the business of producing original master sound recordings of popular hits, commonly referred to as "karaoke music tracks." The tracks are designed to allow consumers of the music to sing along with their favorite songs. Palladium hires musicians and technicians to record music made popular by other artists. The recordings it produces sound similar to the original artist and are produced "in the style" of that artist. Palladium does not, however, incorporate any previously recorded sound components in its production and it does not attempt to change in any way the original musical compositions it uses. The final product is an original sound recording of a previously copyrighted musical composition. For example, Palladium's sound

2

recording number PE2391 is entitled ". . . Baby One More Time" and is Palladium's re-recorded version of the song by the same title made popular by Britney Spears.

It is undisputed that from 1996–1999 Palladium produced its sound recordings without licensing from the copyright owners of the underlying musical works.[1]  It sold its sound recordings to third-party manufacturers, like defendant TPC, who then combined the sound recordings with synchronized lyrics to produce private label karaoke products such as "Compact Disc plus Graphics" (CD+G), Digital Video Discs (DVD), Video Compact Discs (VCD) and Cassette Tapes.  These products were then sold to consumers in the retail market.

In 1999, Palladium decided to launch its first retail product line by offering its sound recordings directly to consumers through digital downloads on the Internet.  It also began the process of filing for copyrights for all of the recordings it had previously produced since 1996, along with copyrights for all of its new recordings.  Palladium filed bulk registrations as "unpublished

---

[1]  There is some dispute as to whether Palladium obtained licensing agreements from the copyright owners of the musical works in early 2000 for the purposes of producing sound recordings for its digital online distribution. However, those sound recordings are apparently not at issue in this case.  The sound recordings at issue here are those Palladium made specifically for sale to third-party manufacturers like TPC for further distribution in karaoke products. Palladium stated in its brief, and again at oral argument, that it did not have (or need) permission from the copyright owners of the musical works to make and distribute those sound recordings.

3

collections" to offset some of the expense of filing for several thousand works. It has continuously filed such registrations since receiving its first approved copyright certificate in 1999.

After launching its first retail line on the Internet in June 2000, Palladium asked all of its manufacturing customers like TPC to sign licensing contracts in an attempt to better define approved products and sales channels with regard to online digital markets. The proposed license would permit the continued incorporation of Palladium sound recordings into traditional karaoke products, but would restrict the sale and use of its sound recordings over the Internet. It would also prohibit any sub-licensing to third parties. Although TPC refused to sign the proposed licensing agreement, Palladium continued to sell its recordings to TPC.

In November 2002, Palladium discovered that defendant ESM was delivering Palladium's sound recordings through ESM's online digital delivery services. Employing embedded digital watermarks, Palladium was able to determine that the files ESM was distributing online were originally sold to TPC for its CD+G line of products. Following this discovery, Palladium brought this action against defendants ESM and TPC alleging copyright infringement for marketing Palladium's sound recordings online without a license.[2] Defendants

_____

[2] Palladium alleged infringement of copyrights for twenty unpublished collections, which it had registered with the Copyright Office, as evidenced by

(continued...)

4

moved for summary judgment claiming that Palladium's copyrights were invalid and unenforceable because Palladium produced the sound recordings at issue without the authority of the copyright owners of the underlying musical compositions.  Following the district court's grant of defendants' motion for summary judgment and denial of their motion for attorney's fees, Palladium appeals and defendants cross appeal.  Only two issues are presented on appeal: (1) whether Palladium owned valid copyrights for its sound recordings, enabling it to establish copyright infringement; and (2) whether the district court abused its discretion in denying an award of attorney's fees to the defendants, pursuant to 17 U.S.C. § 505.

## II.

### A.  Palladium's Copyright Infringement Claim

This court reviews a grant of summary judgment de novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party.  Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002).  Under Federal Rule of Civil

---

[2](...continued) twenty copyright certificates.  The collections identified by the copyright registration certificates are comprised of more than two thousand individual sound recordings based upon previously copyrighted musical compositions. Palladium alleged that TPC and ESM infringed its copyrights by distributing over five hundred of these individual sound recordings.  See Supp. App. at 10.

Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of showing the absence of a genuine issue of material fact, and an entitlement to judgment as a matter of law is upon the movant, but a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corporation, 475 U.S. 574, 586 (1986). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Jacobsen v. Deseret Book Co., 287 F.3d 936, 942 (10th Cir. 2002). A plaintiff's presentation of a certificate of registration from the U.S. Copyright Office usually constitutes prima facie evidence of a valid copyright and

6

of the facts stated in the certificate. 17 U.S.C. § 410(c). Upon presentation of such a certificate, the defendant bears the burden to overcome the presumption of validity. Autoskill Inc. v. National Educational Support Systems, Inc., 994 F.2d 1476, 1487 (10th Cir. 1993). To rebut the presumption, however, a defendant sued for infringement "must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (1997).

To prove ownership of a valid copyright, Palladium presented evidence of twenty certificates of registration obtained for the musical sound recordings it has produced.[3] Each certificate identifies Palladium as the author and lists no preexisting works or materials. Nonetheless, defendants argued that Palladium did not own valid and enforceable copyrights in the sound recordings. To overcome the presumption of validity created by the certificates, defendants presented evidence that the sound recordings Palladium had registered are based upon preexisting musical compositions,[4] and that Palladium had failed to obtain

---

[3] The Copyright Act defines sound recordings as "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisiual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." 17 U.S.C. § 101. Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights. See 17 U.S.C. § 102(a)(2), (7).

[4] Section 102(a)(2) of the Copyright Act specifies "musical works,

(continued...)

7

either compulsory or consensual licenses from the copyright owners of those preexisting musical compositions.

The district court agreed with defendants that Palladium's sound recordings are "derivative works" of the underlying musical compositions and that such derivative works are only protected by the Copyright Act if there is lawful use of the preexisting material. The district court found that Palladium had failed to obtain a license from the copyright owners of the underlying musical compositions as provided in 17 U.S.C. § 115, and thus was not lawfully using the preexisting material. As a result, the district court concluded Palladium's copyrights were therefore invalid and unenforceable.

Palladium contends that the district court erred by concluding its sound recordings are derivative works of the underlying musical compositions. Palladium argues it was not required to obtain the compulsory or consensual licenses for derivative works described in the Copyright Act because its sound recordings are original recordings, and not derivative of the underlying musical compositions.

The Copyright Act defines a derivative work as "a work based upon one or more preexisting works[.]" 17 U.S.C. § 101. Examples of a derivative work

_____

[4](...continued)
including any accompanying words" as among the works of authorship protected under the Act.

8

provided by the Act include, among others, a "translation," "musical arrangement," and most relevant for our purposes, a "sound recording." Id.; See also 2 M. Nimmer, Nimmer on Copyright § 2.10[A] n.8 ("A sound recording is a derivative work in relation to the musical work recorded therein, just as a motion picture is a derivative work in relation to the novel or screenplay upon which it is based."); Pamiloff v. Giant Records, Inc., 794 F.Supp. 933, 938 (N.D.Cal. 1992) (quoting Nimmer). A work can generally be copyrighted as a derivative work only if the new work was produced with the permission of the copyright owner of the preexisting work or its duly authorized licensee. See 17 U.S.C. § 103(a) (providing that copyright in a derivative work "does not extend to any part of the work in which such [pre-existing] material has been used unlawfully"). When the new work is a sound recording, the Copyright Act provides a mechanism for lawfully securing the right to record and distribute the preexisting musical composition through Section 115's compulsory licensing scheme. See 17 U.S.C. § 115.[5]

---

[5]  17 U.S.C. 115(a)(1) specifically provides:

> When phonorecords of a nondramatic musical work have been distributed to the public in the United States under the authority of the copyright owner, any other person, including those who make phonorecords or digital phonorecord deliveries, may, by complying with the provisions of this section, obtain a compulsory license to make and distribute phonorecords of the

(continued...)

9

Palladium does not dispute that its sound recordings are "works" as contemplated by the Copyright Act, nor that they are "based upon" preexisting works—the underlying musical compositions. In fact, Palladium does not really address the Act's definition of derivative works or provide any authority for its assertion that its recordings are not derivative works, other than to point to one section in Circular 56 from the U.S. Copyright Office describing the registration process for "derivative sound recordings." Circular 56 explains that "[a] derivative sound recording is one which incorporates some preexisting sounds—sounds which were previously registered, previously published, or which were fixed before February 15, 1972." Circ. 56 at 5. Palladium argues that since its sound recordings do not incorporate any preexisting sounds, they are entirely "original" and therefore not "derivative" for the purposes of the Copyright Act.

Palladium either simply misreads Circular 56,[6] or draws from it an

---

[5](...continued)
work. A person may obtain a compulsory license only if his or her primary purpose in making phonorecords is to distribute them to the public for private use, including by means of a digital phonorecord delivery.

[6] We note Palladium's reliance upon Circular 56 in lieu of citation to the Copyright Act itself. The circulars provided by the Copyright Office are intended simply to aid the public in understanding copyright law. See Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1242 n.38 (3d Cir. 1986) ("Copyright Office circulars are not technical documents, but are 'intended to present simple explanations of the law,' for lay persons."). While they certainly
(continued...)

10

unwarranted inference.  Nothing in Circular 56 supports the conclusion that <u>only</u>

sound recordings that incorporate some preexisting sounds are "derivative" works

for the purposes of the Copyright Act.[7]  Indeed, one example in the circular

explains in unmistakable terms that a party in Palladium's position must first

"comply[] with permissions and license procedures" before it can obtain a valid

copyright in a sound recording, "derivative" or otherwise, if it is based upon a

preexisting musical composition.  Circ. 56 at 3.[8]

The Copyright Act provisions that address rights in musical works and the

compulsory licensing scheme for sound recordings of those musical works support

---

[6](...continued)
may supplement our understanding of what is required for effective registration,
see <u>Xoom, Inc. v. Imageline, Inc.</u>, 323 F.3d 279, 284–85 (4th Cir. 2003), they are
hardly more binding on statutory interpretation than a plain reading of the
Copyright Act itself, or the Copyright regulations, codified at 37 C.F.R. § 202 et
al. <u>See</u> <u>Whelan</u>, 797 F.2d at 1242 n.38  (refusing to give deference to a circular).

[7] <u>C.f.</u>, 1 <u>Nimmer</u> § 3.06 ("[A derivative] categorization applies only to the
extent that the pre-existing elements upon which a given derivative or collective
work is based themselves constitute an original work of authorship within the
meaning of Section 102.").  Of course, Palladium does not dispute that the
musical works upon which its sound recordings are based are original works
under the meaning of Section 102, which provides protection for "musical works,
including any accompanying words[.]" 17 U.S.C. § 102(a)(2).

[8] In addition, Circular 50, entitled "Copyright Registration for Musical
Compositions," which Palladium also cites in its brief, provides that "[c]opyright
in a musical work includes the right to make and distribute the first sound
recording.  Although others are permitted to make subsequent sound recordings,
they <u>must</u> compensate the copyright owner of the musical work under the
compulsory licensing provision of the law (title 17, United States Code, Section
115)." Circ. 50 at 1 (emphasis added).

11

the conclusion that when producing and selling a sound recording one must secure a license from the copyright owner of the underlying musical work. Under Section 106 of the Copyright Act, the owner of a copyright in a work of authorship generally has the following "exclusive rights":

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]

17 U.S.C. § 106(1)–(3). The copyright laws, however, attempt to strike a balance between rewarding the creative labor of authors of original works, and promoting further creativity by allowing public access to their works. See Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984). As applied to the present case, the most relevant example of this balance is the limitation the Act imposes on the exclusive rights of the copyright owner in an original musical work. That limitation is set forth in Section 115, which provides that the exclusive rights in the musical work under Section 106(1) and (3) are subject to "compulsory licensing" under certain specified conditions. See 17 U.S.C. § 115.[9]

Under Section 115, a party intending to make and distribute a sound recording of a previously published musical work may obtain a compulsory

---

[9] Of course, the copyright owner in the musical work retains the right to prepare other "derivative works" under § 106(2) such as musical arrangements. 17 U.S.C. § 115(a)(2).

12

license in that work simply by complying with the statutory requirements, including timely and sufficient notice to the owner of the copyright in the musical work and payment of statutory, or otherwise negotiated, royalties. 17 U.S.C. § 115(a)(1), (b), (c). Thus, the exclusive rights of copyright owners of previously published musical works are limited only in that they are required (hence the term "compulsory") to license the work to a party who has complied with Section 115. The concept is simple. In order for a party in Palladium's position to lawfully use preexisting, copyrighted musical works to create and sell its sound recordings, it must first secure the appropriate licensing from the copyright owners of those musical works. See Bridgeport Music, Inc. v. Dimension Films, 383 F.3d 390, 398 n.7 (6th Cir. 2004) ("Needless to say, in the case of a [sound] recording of a musical composition the imitator would have to clear with the holder of the composition copyright."). By failing to comply with Section 115, Palladium has illegally used the preexisting material. See 17 U.S.C. § 103(a). As a result, Palladium's copyrights in the sound recordings at issue are invalid and unenforceable.

Palladium also argues, in the alternative, that the licensing scheme provided by Section 115 does not apply here because Palladium only distributed its sound recordings on a wholesale basis and not retail or "directly to the public" as required by § 115(a)(1). See Aplt. Br. at 10. As support for this argument,

13

Palladium relies upon the first sentence of § 115(a)(1), which provides:

> When phonorecords of a nondramatic musical work <u>have been distributed to the public</u> in the United States under the authority of the copyright owner, any other person, including those who make phonorecords or digital phonorecord deliveries, may, by complying with the provisions of this section, obtain a compulsory license to make and distribute phonorecords of the work.

(emphasis added). Palladium fails to offer any authority, and we could find none, for reading a wholesale/retail distinction into § 115(a)(1). More importantly, the first sentence of § 115(a)(1) refers to public distribution of (a) a nondramatic musical work, and (b) under the authority of the copyright owner of that musical work. <u>See</u> <u>also</u>, <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F.2d at 1332, 1334 n.2 (9th Cir. 1990) (noting that "[o]nce the owner of a copyright in a nondramatic musical work distributes copies of that work to the public," others may obtain a compulsory license under Section 115); 2 <u>Nimmer</u> § 8.04[A] (stating that Section 115's compulsory license is applicable only to copyright owners of "nondramatic musical works"). The first sentence, therefore, cannot address Palladium's distribution, whether retail or wholesale, of its sound recordings because, as Palladium admits, it is not a copyright owner of the underlying musical works. Instead, this language refers to the initial distribution to the public "under the authority of the copyright owner" which triggers when others may, by complying with Section 115, obtain a compulsory license to make and distribute the work in

14

question.

Palladium's sound recordings are derivative works, and its copyrights in the sound recordings are invalid and unenforceable because it has failed to obtain compulsory or consensual licenses from the copyright owners of the underlying musical compositions as required by 17 U.S.C. § 115. Further, Palladium's wholesale/retail argument has no application to the "distributed to the public" reference in § 115(a)(1).

## B. Defendants' Motion for Attorney's Fees

The defendants appeal the district court's denial of their motion for attorneys' fees under 17 U.S.C. § 505. The Copyright Act authorizes the award of reasonable attorney's fees to the prevailing party in a suit under the Act. 17 U.S.C. § 505. This court reviews the district court's denial of attorney's fees for abuse of discretion. Id.; Fogerty v. Fantasy, Inc., 510 U.S. 517, 524 n.11 (1994) ("[D]istrict courts are to use their discretion in awarding attorney's fees and costs to the prevailing party."). Under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." McEwen v. City of Norman, Okl., 926 F.2d 1539, 1553–54 (10th Cir. 1991).

The Supreme Court in Fogerty acknowledged that because fees under

Section 505 are to be awarded to prevailing parties only as a matter of the court's discretion, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" 510 U.S. at 534 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436–437 (1938)).  The Court also suggested several nonexclusive factors for the district court to consider, including "'frivolousness, motivation, objective unreasonableness (both in the factual and the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" See 510 U.S. at 534 n.19 (quoting Lieb v. Topstone Industries, Inc., 788 F.2d 151, 156 (1986)).  These "factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner."  Id.

In denying the defendants attorney's fees, the district court explicitly considered the nonexclusive Fogerty factors and found in its discretion that while Palladium's claims were unsuccessful, it would not award attorney's fees to the defendants.  The district court also outlined the competing interests furthered by the Copyright Act and determined that neither would be served by awarding fees in this case.  As such, the district court appropriately considered the applicable legal standard and the facts of the case.  See Ohlander v. Larson, 114 F.3d 1531,

16

1537 (10th Cir.1997) (district court abuses its discretion when it "fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based"). We cannot conclude that the district court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances.

AFFIRMED.