**F I L E D**

**UNITED STATES COURT OF APPEALS**

**April 25, 2006**

**FOR THE TENTH CIRCUIT**

GILBERT MARTINEZ,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 05-4170
(D.C. No. 2:01-CV-614-DS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

      This is an appeal from a summary judgment in a discrimination and retaliation case. Plaintiff-Appellant Gilbert Martinez argues that the district court (1) rejected direct evidence of discrimination; (2) misconstrued and discounted evidence of pretext; and (3) disregarded evidence of retaliation. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**Background**

In 1990, Martinez began serving as an administrative law judge (ALJ) in the Office of Hearings and Appeals for the Social Security Administration (SSA) in Salt Lake City. He was the only Hispanic ALJ serving in that office. In 1992, Martinez became the Acting Chief ALJ, and later, the Chief ALJ, "with the recommendation of . . . Regional Chief Judge James Rucker Jr." Aplee. Supp. App. at 35. Rucker also appointed Martinez as the Acting Chief ALJ in the Billings, Montana office.

In 1994, Martinez began an affair with a co-worker, who worked on his team as a Legal Assistant in the Salt Lake City office. Martinez was the co-worker's third line supervisor. At the time, there was no written rule or policy prohibiting romantic relationships between supervisors and their subordinates.

In early February 1997, Rucker learned of the relationship after Martinez's sister-in-law complained. On February 6, 1997, Rucker met with Martinez to discuss the matter. Rucker told Martinez that the relationship "compromise[d] the integrity of the management structure" and that "whatever [the co-worker] did would be perceived [as] the result of her sleeping with the boss." Aplt. App. at 143. Rucker was also concerned about "[a]dverse publicity," *id.* at 144, because Martinez's sister-in-law was "very irate" and "was threatening to call everyone she could think of," *id.* at 143. Rucker gave Martinez the option of either

transferring the co-worker or stepping down as the Chief ALJ in Salt Lake City. Martinez agreed to step down. Aplee. Supp. App. at 60. But on February 12, Martinez told Rucker that he had done nothing wrong and would step down only temporarily "if Rucker allowed him the opportunity to resolve the problem." *Id.* at 61. Rucker declined.

On February 13, after Martinez announced at a staff meeting that he "was NOT stepping down," Aplt. App. at 170, Rucker relieved Martinez of his duties as Chief ALJ in Salt Lake City and Acting Chief ALJ in Billings, because he had lost "trust and confidence in [Martinez]," *id.* at 145. Martinez resumed his post as an ALJ in Salt Lake City and filed a complaint with the SSA's Office of Civil Rights and Equal Opportunity in April 1997. He alleged that "it is reasonable to infer my race or national origin (Hispanic) was a factor in the wrongful discharge" because "the agency has tolerated or accepted that white Administrative Law Judges can have relationships with white female employees." Aplee. Supp. App. at 5-6.

In May 1997, the SSA sought applicants for the vacant Chief ALJ position in Salt Lake City. Martinez applied, but also requested that the vacancy announcement be withdrawn and that he be reinstated as Chief ALJ because his co-worker had transferred to the Department of Labor. Rucker recommended another applicant for the position instead of Martinez "because of [Martinez's]

inability or refusal to understand some fundamentals of office management." Aplt. App. at 193. In September 1997, the SSA selected a Caucasian ALJ with less experience than Martinez. In response, Martinez filed another administrative complaint, alleging "retaliation for filing the first EEO Complaint." *Id.* at 551.

In March 1998, the new Chief ALJ met with Martinez to discuss dress code and attendance issues, as well as a new office policy discouraging closed-door meetings with female employees. In response, Martinez filed a third administrative complaint, claiming that the meeting was in retaliation for filing the prior complaints. Martinez filed a fourth complaint based on an August 1998 meeting in which he was asked to stop greeting female employees each morning with a handshake.

In late-1998 and early-1999, several social security claimants and their representatives lodged complaints against Martinez for "making insensitive comments to a claimant and her same-sex partner, treating women badly, [and] making a remark to an HIV claimant about Magic Johnson and living with AIDS." *Id.* at 258. The complaints were investigated, but the "matter was dropped" as "there was no consensus about any specific problem." *Id.* Martinez was removed, however, from his rotation to the Reno, Nevada SSA office after a female employee there accused him of sexual harassment. Martinez responded to

the investigation and removal by filing his fifth and final administrative complaint.

Martinez sued the SSA in August 2001 for employment discrimination and retaliation when his administrative complaints failed. The district court granted the SSA summary judgment and Martinez appealed.

**Discussion**

*I. Summary Judgment Standards*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review "a grant of summary judgment de novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). "Like other evidentiary rulings, we review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion." *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997).

*II. Discrimination and Retaliation Claims*

Title VII of the Civil Rights Act of 1964, as amended in 1972, requires that personnel actions affecting federal employees or applicants for federal employment be made without discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16. To prevail under Title VII, a plaintiff must show intentional discrimination through either direct or indirect evidence. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). The burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is used to indirectly prove intentional discrimination when there is no direct evidence of discrimination. *Id.* Under *McDonnell Douglas*, if a plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant to show a legitimate non-discriminatory reason for the adverse employment action. *Id.* "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Id.*

*A.*

Martinez argues that summary judgment was inappropriate because he proffered direct evidence of discrimination. Specifically, he points to his June 1999 deposition in which he testified that Rucker told him during their February 6, 1997 meeting that Regional Management Officer Matt Trocheck's affair with a female employee was different because "Matt is white." Aplt. App.

-6-

at 595, 597. Rucker denies making such a statement. (Aplee. Supp. App. at 85.) The district court found it "inconceivable that [Martinez] would have neglected to mention such a discriminatory comment" during the first two years of the administrative process. Aplt. App. at 604.[1] We agree.

In his administrative complaints and supporting affidavits, Martinez discussed Trocheck as well as the February 1997 meeting with Rucker in detail and at length, but never once mentioned the alleged comment. In fact, Martinez submitted a sworn twenty-eight page affidavit to an EEO investigator on February 17, 1998, which failed to mention the comment. It was not until a deposition on June 3, 1999, that Martinez disclosed Rucker's alleged discriminatory statement. Before then, Martinez relied on indirect evidence only, stating that discrimination could be "infer[red]" from the SSA tolerating inter-office relationships between Caucasian ALJ's or supervisors and their subordinates. Aplee. Supp. App. at 5-6; *see also id.* at 72-73 (arguing that Rucker's reliance on a "loss of confidence" in Martinez when filling the vacant Chief ALJ position was pretextual because "Rucker allowed other White Judges and White Supervisors to be involved" with female subordinates); *id.* at 78 (suggesting discriminatory treatment because "[t]here have been several White

---

[1] The administrative law judge who found no discrimination in the EEO proceeding found "that the statement is a recent fabrication of the complainant." Aplt. App. at 81.

-7-

Chief ALJ's that had social relationships with first or second line supervisors in their offices and nothing has ever been done to discipline them").

In determining whether summary judgment is appropriate, a court should not disregard a party's evidence simply because it conflicts with his or her prior sworn statements; however, such evidence may be disregarded when a court concludes that the evidence is merely an attempt to create a sham fact issue. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (disregarding an affidavit that is contrary to the affiant's earlier sworn statements and designed to create a sham issue of fact); *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) (extending *Franks* to deposition corrections that contradict the original testimony). "[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting [evidence] contradicting his own prior testimony." *Franks*, 796 F.2d at 1237. "Factors relevant to the existence of a sham fact issue include whether the [party] was cross-examined during his earlier testimony, whether the [party] had access to the pertinent evidence at the time of his earlier testimony or whether the [contested evidence] was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the [contested evidence] attempts to explain." *Id.*

-8-

Applying these factors, we hold that the district court did not abuse its discretion in finding that the alleged comment presented a sham fact issue, and consequently, in excluding Martinez's deposition testimony. First, the purported comment cannot be seen as simply a clarification of Martinez's earlier testimony that discrimination had to be inferred from the absence of discipline for Caucasian supervisors who had affairs with subordinates. Further, Martinez prepared his earlier testimony consisting of detailed, written administrative complaints and sworn affidavits at a time when the purported "Matt is white" comment would not only have been fresh in his memory, but when he had ample time to prepare a considered and artful response. *Cf. Burns*, 330 F.3d at 1282 (comparing depositions to interrogatories and noting that an interrogatory is akin to a "take home examination" where the party has an opportunity to plan "artful responses") (quotation marks omitted). And although Martinez's earlier testimony was not subject to cross-examination, that factor is overshadowed by the significance of Martinez—a judge—repeatedly failing to mention in the administrative proceedings a racially discriminatory comment by his superior that would have cemented his racial discrimination claim.

We reject Martinez's attempt to support his "Matt is white" deposition testimony with his contemporaneous speculation that "I think I mentioned" the "Matt is white" comment to "EEO counselor . . . Jim Bryck." Aplt. App. at 595.

Martinez identifies no part of Bryck's report containing the "Matt is white" comment. It simply defies explanation that Martinez, for two years, would fail to mention the single best piece of evidence supporting his discrimination claim.

Based on the foregoing reasons, we cannot say that the district court abused its discretion in finding Martinez's evidence of direct discrimination a sham and excluding it. Therefore, we affirm the court's grant of summary judgment in this regard.

*B.*

Martinez next argues that the district court misconstrued and improperly weighed his evidence of pretext, including (1) the SSA's lack of a policy or rule prohibiting romantic relationships with subordinates, (2) Rucker's tolerance of other relationships, (3) Rucker's failure to impose less punitive sanctions against Martinez, (4) Rucker's expression of purportedly inconsistent concerns about Martinez's affair, (5) Rucker's alleged comment several years earlier that a judge was a "token" appointment, and (6) Rucker's hiring record.

We have considered these arguments in light of the evidence presented and conclude, for substantially the same reasons identified by the district court, that summary judgment was properly granted. The district court concluded that the absence of a policy did not create an inference of pretext flowing from Rucker's loss of confidence in the highest ranking official in the office conducting an open

-10-

extramarital relationship. Nor were the circumstances involving the other

employees' relationships with subordinates substantially similar. The demotion of

Martinez from a supervisory position based on Rucker's loss of confidence in his

management abilities and his explanations of his concerns over Martinez's

conduct similarly raise no issues of material fact for a jury.

Martinez also argues that the district court failed to consider his claim that

in 1995 Rucker described Hispanic Acting Chief ALJ Jose Anglada as a "token"

appointment. *See* Aplee. Supp. App. at 15. This stray remark, however, is not

sufficient to create a jury issue in a racial discrimination case. "Isolated

comments, unrelated to the challenged action, are insufficient to show

discriminatory animus in termination decisions." *Cone v. Longmont United*

*Hosp., Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). Additionally, Martinez's

assertion that Rucker has a "poor record of hiring and promoting Hispanic ALJs,"

Aplt. Opening Br. at 25, is not persuasive evidence of pretext, given Martinez's

affidavit testimony that he was appointed as the Salt Lake City Chief ALJ and

Billings Acting Chief ALJ with Rucker's recommendation and approval.[2]

*C.*

---

[2]     To the extent Martinez argues that the "token" comment and Rucker's
hiring record constitute direct evidence of pretext, he is incorrect. Direct
evidence is "based on personal knowledge or observation and that, if true, proves
a fact without inference or presumption." Black's Law Dictionary 596 (8th ed.
2004).

-11-

Finally, Martinez summarily argues that the district court employed "only a superficial analysis of . . . [the] retaliation claims" and disregarded "several of the retaliatory acts," including the imposition of a hostile work environment. Aplt. Opening Br. at 29. We have also considered these arguments, and conclude for substantially the same reasons identified by the district court, that summary judgment was properly granted.

## Conclusion

Accordingly, for the reasons stated above, we AFFIRM.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge