FILED
United States Court of Appeals
Tenth Circuit

April 16, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MINGYI ROWE,

　　　　Plaintiff - Appellant,

v.

UNITED AIRLINES, INC.,

　　　　Defendant - Appellee.

No. 14-1317
(D.C. No. 1:13-CV-00055-CMA-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MORITZ**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

Plaintiff Mingyi Rowe appeals the district court's order granting summary

judgment in favor of defendant United Airlines, Inc. (United), her former employer,

on her federal claims under the Family and Medical Leave Act (FMLA), 29 U.S.C.

§§ 2601-2654, and the Americans with Disabilities Act (ADA), 42 U.S.C.

§§ 12101-12213, and declining to exercise supplemental jurisdiction over her

---

[*]　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

state-law claims under the Illinois Human Rights Act (IHRA), 775 ILCS 5/6-101(A), and her claim of intentional infliction of emotional distress. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

The following facts are either undisputed or construed in favor of Rowe as the party opposing United's motion for summary judgment. Rowe is an American citizen originally from Taiwan. Although she and her husband live in Colorado, her parents and other relatives live in Taipei. Rowe began working for United as a flight attendant in December 2000 or January 2001, and she was based in Denver from 2007 until her termination on July 11, 2011. Rowe's husband also is a United flight attendant.

United flight attendants can travel for personal trips at little or no cost. Using a computer to log on to United's internal flight search system, they can search flight times, connections and flight "loads." A flight load shows the number of seats already booked for a given flight and the number of seats remaining open— information that assists in gauging the likelihood of obtaining a seat on a flight. Attendants can place themselves on a flight "standby" list beginning one week in advance of a flight. Listing does not guarantee a seat and boarding priority is based on various factors. Also, in February 2011, United flight attendants could use "coupons" to list for a flight, thereby increasing their boarding priority and the likelihood of getting a seat.

United also permits its flight attendants free personal travel via available "jumpseats," the small, fold-down seats at the front and back of a plane used by working flight attendants during take-off and landing. In order to secure a jumpseat, flight attendants must arrive at the airport at least 30 minutes before the flight departs to place their names on a list. Available jumpseats are then assigned in order of seniority. United has no mechanism to check for a flight's jumpseat availability or to know how many flight attendants with more seniority will also attempt to secure a jumpseat. However, United also permits its flight attendants to purchase tickets for available seats at a discount either on United flights or on other airlines.

In October 2010, United granted Rowe and her husband's bid for vacation leave from March 2 through March 27, 2011. Rowe and her husband spent February 25 through April 1, 2011, in Taipei. Although United had not scheduled Rowe to work from February 24 through February 26, it had assigned her to work a standby reserve assignment in Denver February 27 through March 1.

In January and February 2011, Rowe and her husband conducted many searches on United's internal system for flights from Denver to Taipei and returning from Taipei to Denver. Although Rowe was scheduled to work standby from February 27 to March 1, every search Rowe or her husband conducted sought information for flights leaving either from February 22 to February 25. Neither Rowe nor her husband conducted any searches for a return flight from Taipei prior to April 1. The record shows Rowe and her husband conducted the following searches:

- January 14: Rowe searched for flights departing from Denver to Taipei on February 22 and February 23, and returning from Taipei to Denver on March 31

- January 16: Rowe's husband searched for flights departing from Denver to Taipei on February 25, 26, and 27; he did not search for returning flights.

- February 4: Rowe's husband searched for flights departing from Denver to Taipei on February 24, and returning from Taipei to Denver on April 2;

- February 19: Rowe's husband searched for flights departing from Denver to Taipei on February 23 and 24 and returning from Taipei to Denver on April 2 and April 24;

- February 22: Rowe searched for flights departing from Denver to Taipei on February 23 and 24, and returning from Taipei to Denver on April 1

- February 23: Rowe searched for flights departing from Denver for Taipei on February 24. She did not search for any returning flights.

  February 23: Rowe's husband searched for flights departing from Denver to Taipei on February 24. He did not search for any returning flights.

Although Rowe searched as late as February 22 for flights departing on February 23 and as late as 1:00 p.m. on February 23 for flights departing on February 24, she testified that it wasn't until she received a call from her parents on the evening of February 23 advising that her uncle in Taipei had been taken to the hospital and was close to death, that she and her husband decided to leave for Taiwan. On February 23, the Rowes listed for United flights on February 24 and February 25, using the 6-7 coupons they had between them, increasing their chances of getting seats on the flights. The Rowes had enough coupons to list them both on the three flights they took to reach Taipei (Denver to Seattle, Seattle to Tokyo, and Tokyo to Taipei). Rowe did not list for any flights returning from Taipei to Denver.

- 4 -

The Rowes arrived in Taipei on February 25 at approximately 11 p.m. local time. In order to return to Denver in time for her work assignment on February 27, Rowe would have had to leave Taipei less than 12 hours later, on United's 10:20 a.m. flight on February 26.[1]

Rowe did not return to Denver for her three-day shift beginning on February 27. She developed a migraine shortly before arrival in Taipei on February 25. The migraine continued intermittently until February 28, and Rowe knew by 12:45 a.m. on February 26 that she would not return for her February 27 shift. On February 27, she called-in sick under pre-approved FMLA leave. Rowe remained on FMLA leave until she removed herself from it on March 1, the end of her scheduled work assignment.

It is uncontroverted that Rowe never searched for United flights leaving Taipei for Denver on February 26, never purchased a regular price or discount ticket for the 10:20 a.m. flight on February 26, never listed for a seat on the flight, and never checked the flight load on the 10:20 a.m. flight to determine the availability of any seats.

It is also uncontroverted that Rowe began suffering migraines in 2003 and was unable to work during a migraine episode. United had approved Rowe's intermittent use of FMLA leave for absences due to migraines in 2003 and from 2005 through

---

[1] The record shows that Taiwan is 15 hours ahead of Denver during standard time, so Rowe would have jumped back 15 hours during the return flight. *See* 3 Aplt. App. at 439.

2011, and she took FMLA leave for migraines on 78 occasions while she was based in Denver between 2007 and 2011. Prior to her use of FMLA leave for her three-day shift scheduled for February 27 through March 1, 2011, however, Dodge had never questioned Rowe about her attendance. In fact, she had received two commendations for perfect attendance from United.

Upon Rowe's return to Denver, her immediate supervisor, Mark Dodge, requested that she meet with him on April 5. During the meeting, Dodge questioned Rowe about her trip to Taiwan and her plan to return for her three-day assignment. Rowe told Dodge she intended to "jumpseat" back to Denver on the 10:20 a.m. flight from Taipei on February 26 or purchase a regular seat on that flight. In her written report of the meeting, Rowe confirmed that she had no "back-up plan" to return to Denver if no jumpseat was available and the flight was full.

Dodge briefly met with Rowe again on April 21 and Dodge's supervisor, Dean Whittaker, met with Rowe on May 31. Whittaker did not believe Rowe's claim that when she left Denver for Taiwan on February 24, she intended to leave Taiwan within 12 hours after arriving there, in order to return to Denver for her three-day shift on February 27. Whittaker terminated Rowe's employment on July 11, 2011, on the basis of dishonesty, because she "falsely claimed illness as the reason for [her] absence from work on February 27, 28 and March 1, 2011," and because she had not boarded the February 26 flight out of Taipei or listed to travel on that flight.

Rowe brought this action alleging violations of the FMLA and the ADA, state law claims under the IHRA, and a state law claim for intentional infliction of emotional distress. United moved for summary judgment on all of Rowe's claims. In its motion, United did not dispute that Rowe experienced a migraine episode beginning on February 25, but asserted she was terminated because Whittaker believed she neither planned nor intended to return to Denver for her February 27 shift when she left Denver for Taipei on February 24. *Id.* at 93.

The district court granted summary judgment for United on all of Rowe's claims. In rejecting Rowe's claim that United retaliated and/or discriminated against her for taking FMLA leave, the court found United had established through material, uncontroverted facts that it discharged Rowe for a legitimate, nondiscriminatory reason – *i.e.*, because it believed she lied when she claimed she intended to return to Denver for her three-day shift. The court concluded United's belief was supported by the timing of Rowe's travel to Taipei shortly before her scheduled three-day shift, her request for FMLA leave from February 27 through March 1, and the record of Rowe and her husband's computer searches for flights to and from Taipei beginning in January 2011. The court also concluded Rowe failed to show United's reason was pretextual. *Id.* at 171. Further, the court granted summary judgment on Rowe's FMLA interference claim based on its conclusion that she would have been fired for dishonesty regardless of her request for FMLA leave.

For the same reasons it granted summary judgment on Rowe's FMLA claims, the district court rejected Rowe's ADA claim that United discriminated against her because of her disability. The court also noted that because United had always granted Rowe's requests for FMLA leave for her migraine episodes, it had always provided reasonable accommodation for her inability to work when she had a migraine. *Id.* at 175-76. The district court declined to exercise supplemental jurisdiction over Rowe's state-law claims and dismissed them without prejudice. *Id.* at 176-77. This appeal followed.

## II.  Discussion

Rowe argues the district court erred in granting summary judgment for United because the court failed to construe the evidence in her favor or recognize the existence of disputed questions of fact.

We review a grant of summary judgment de novo by examining the record and drawing all reasonable inferences from that record in the light most favorable to the non-moving party. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)).

The burden is on the party moving for summary judgment to show the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law.

"[B]ut a party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Palladium*, 398 F.3d at 1196 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). And "conclusory allegations will not suffice to establish an issue of fact." *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).

In an employment case, it is not our position to judge whether an employer's "proffered reasons were wise, fair[,] or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation marks omitted). "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision." *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) (internal quotation marks omitted). An employer's good-faith belief "would not be pretextual even if the belief was later found to be erroneous." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1268-69 (10th Cir. 2004) (internal quotation marks omitted). Nevertheless, "[p]retext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted).

Rowe asserts five arguments on appeal. First, she contends the district court failed to construe the evidence in her favor. In support, Rowe argues (1) the evidence supports an inference that Dodge lied when he said that he confronted Rowe with the record of her flight searches at the April 5 meeting, because the Weblist Log was not requested or printed until the end of June, and Dodge then requested confirmation from another United official that he had interpreted it correctly; and (2) Dodge failed to follow-up to determine whether the 10:20 flight from Taipei flew "full" on February 26, which another United official had asked him to check on.

But whether the record supports an inference that Dodge lied about or misstated the date he obtained the Weblist Log is not a genuine issue of material fact, as Rowe does not dispute the information contained in the log or that it was available to the decision-maker, Whittaker, by the end of June, before he terminated her employment. Nor has Rowe shown that whether the 10:20 flight from Taipei flew "full" on February 26 had any significance or was "material" to Whittaker, who was not the United official who asked Dodge to obtain that information.

Second, Rowe argues that United's admission in its summary judgment motion that a migraine prevented her from returning to Denver for her standby assignment

created a disputed question of fact as to whether United believed Rowe did not intend to return for work when she left Denver before that shift. But the undisputed evidence shows that Whittaker discharged Rowe because he did not believe her claim that she planned to return to Denver for her February 27 shift when she left for Taipei on February 24. Whitaker's conclusion is substantiated by ample information—(1) the 10:20 a.m. flight Rowe said she intended to take out of Taipei on February 26 would have required her to leave Taipei less than 12 hours after she arrived; (2) Rowe and her husband performed multiple computer searches for flights to and from Taipei for several weeks prior to their departure and up until the day they left, but neither she nor her husband ever searched for flights that would have returned Rowe to Denver for her three-day shift; (3) Rowe never sought to place herself on a flight "standby" list for the 10:20 a.m. flight or any flight that would have returned her to Denver for her shift; (4) Rowe made no effort to "list" herself on the 10:20 a.m. flight or obtain boarding priority; and (5) Rowe never sought to use "coupons" to list for that flight to increase her likelihood of getting a seat.

Third, Rowe contends that her evidence showing United's errors or dishonesty in conducting its investigation of her conduct created a disputed question of fact as to whether United truly believed that she had been dishonest in February 2011. As indicated above, however, the issue is whether the decision-maker, Whittaker, honestly believed she did not plan to return for her three-day shift. Rowe's allegations of dishonesty concern Dodge, not Whittaker. She has presented no

evidence upon which a rational jury could conclude that Whittaker did not honestly believe that she lied when she told him that she planned to return to Denver for her February 27 shift when she left for Taipei on February 24.

Fourth, Rowe makes a conclusory argument that summary judgment was precluded on her ADA claim because her extensive use of FMLA leave while based in Denver created a disputed issue as to whether United officials were aware of her disability, *i.e.*, her migraines. But the district court granted summary judgment in favor of United on her ADA claim because United had always accommodated her need for FMLA leave, not because her migraines were not a disability. Because Rowe does not challenge the district court's reasoning, we need not consider that argument. *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (holding that where "[t]he argument section of [appellant's] opening brief does not challenge the [district] court's reasoning on [a] point, . . . [w]e therefore do not address the matter").

Finally, Rowe argues the district court improperly dismissed her state-law claim for intentional infliction of emotional distress. But because the court properly granted summary judgment in favor of United on Rowe's federal claims, the court did not abuse its discretion by declining to exercise supplemental jurisdiction over her state-law claims. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)).

Because the district court properly granted summary judgment to United on all of Rowe's claims, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge