**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

GLADYS ANTONIO,

        Plaintiff-Appellant,

v.

THE SYGMA NETWORK, INC.,
a Delaware corporation; SYSCO
CORPORATION, a Delaware
corporation,

        Defendants-Appellees.

No. 05-1374

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 03-CV-156-RPM-BNB)**

---

Submitted on the briefs:[*]

Darold W. Killmer and Mari Newman, Killmer, Lane & Newman, LLP, Denver,
Colorado, for Plaintiff-Appellant.

Brian T. Moore, Silver & DeBoskey, a Professional Corporation, Denver,
Colorado, for Defendants-Appellees.

---

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

**BRORBY**, Circuit Judge.

Gladys Antonio appeals the summary judgment in her employment retaliation and discrimination case. We conclude that the district court properly ruled that (1) Antonio's prima facie case of retaliation failed for lack of causation and (2) her discrimination case failed because she was unable to characterize as pretext her employer's reason for termination. Accordingly, we affirm.

## BACKGROUND

Antonio is a black woman from Zimbabwe. In 2000, she interviewed for an accountant position with Sysco Corporation's subsidiary, the Sygma Network, Inc. (collectively, Sygma). The Sygma interview team, which included accounting supervisor Dena Johnson, unanimously agreed to hire her. Antonio worked for Sygma from July until December 2000, when her work visa expired. In March 2001, after Antonio obtained permanent resident status, Sygma re-hired her, with the approval of Johnson, the rest of the original interview team, and another Sygma employee (collectively, the personnel committee).

Several weeks later, around March 29, Johnson told Antonio that she had offensive body odor and "believed it had to do with [Antonio's] culture." Aplt. App. at 254. Antonio complained to a human resources representative, stating that she "felt very harassed" and "alienated." *Id.* In response, the representative

-2-

notified Johnson's supervisor and "coached [Johnson] on being more aware of sensitivities to that area of race, national origin, or any other areas of discrimination." *Id.* at 163. Afterward, Johnson was "cold" and avoided speaking with Antonio for several weeks. *Id.* at 265, 268.

Roughly three months later, in July 2001, Johnson gave Antonio a positive annual performance appraisal, rating her overall performance as "equal to or somewhat better than the standard for the position." *Id.* at 167. Antonio wrote in her self-appraisal that "[Johnson] has been an excellent source of training and assistance. There is no limit to the amount of help and clarification that she is willing to provide, and as a result I have learned a great deal from her." *Id.* at 168.

In December 2001, Antonio traveled to Zimbabwe for vacation. Although she was scheduled to return to work on December 31, the beginning of the accounting department's busy "quarter close" week, *id.* at 72, she was delayed by a "problem" with her and her husband's "immigration papers," *id.* at 268. Antonio phoned Johnson regarding the problem on December 29 and 31 and promised to keep her updated. But due to malfunctioning "international telephone lines," she was unable to get through. *Id.* at 269. On January 4, 2002, Johnson met with the other members of the personnel committee and concluded that Antonio's failure to keep in contact after December 31 should be construed as job abandonment. Accordingly, Sygma mailed Antonio a letter that day, stating:

"Due to the fact that we have not heard from you in the last 4 days we are considering your position abandoned and your lack of communication a resignation from your position." *Id.* at 422. On January 11, Antonio returned to the United States and learned that she had been terminated. Roughly a month later, Sygma filled her position with a white, U.S.-born applicant.

After exhausting administrative remedies, Antonio sued Sygma, advancing claims for (1) race and national origin discrimination in violation of 42 U.S.C. § 1981; (2) race and national origin discrimination and retaliation in violation of Title VII; (3) promissory estoppel; and (4) breach of the covenant of good faith and fair dealing. The district court granted Sygma summary judgment, ruling that there was no causal connection between Johnson's "culture" remark and Antonio's separation from Sygma, and that Antonio's failure to return to work as scheduled was a legitimate, non-discriminatory, non-pretextual reason for declaring her job abandoned. Regarding the state law claims, the district court simply ruled that Antonio was an at-will employee, Sygma made no legally enforceable representations, and there was "no breach of any provision." Aplt. App. at 684.

Antonio appealed.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review "a grant of summary judgment de novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

Title VII prohibits an employer from terminating any individual because of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or because that individual opposed unlawful discrimination, 42 U.S.C. § 2000e-3(a). Section 1981, on the other hand, "provides equal rights to make and enforce contracts and to the benefits of laws for the security of persons and property." *Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006). Without direct evidence of discrimination, we apply the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in Title VII and § 1981 cases. *See Maldonado*, 433 F.3d at 1307; *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005).

Under *McDonnell Douglas*, if the plaintiff can establish a prima facie case of discrimination or retaliation, the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action. *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177, 1179 (10th Cir. 2000). If the defendant meets this burden, the burden shifts back

to the plaintiff to demonstrate that the defendant's proffered reason is pretext. *Id.* at 1177.

## I. Prima Facie Retaliatory Termination

To establish a prima facie case of retaliation, Antonio must show that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Antonio challenges the district court's ruling that her prima facie case failed with respect to causation.[1]

An employee "may establish the causal connection by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (quotation omitted). But "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). We agree with the district court that Antonio's termination nine months after her complaint

---

[1] Like the district court, we assume that Antonio's complaint regarding Johnson's "culture" remark constitutes protected opposition to discrimination.

about Johnson's remark is too temporally remote to support an inference of causation. *See id.* (observing that "a three-month period, standing alone, is insufficient to establish causation"). Consequently, we examine Antonio's other evidence for a connection between her complaint and subsequent termination.

As evidence that Antonio was terminated for complaining about Johnson's remark, Antonio cites: (1) deposition testimony that members of the personnel committee knew that Antonio liked her job and had been trying to leave Zimbabwe to return to work; (2) Johnson's deposition testimony that she would not rehire Antonio; (3) Sygma's failure to employ progressive discipline instead of termination; (4) Sygma's reliance on job abandonment when there was purportedly no written job abandonment policy; (5) Sygma's use of different discipline for "white and American-born" employees, Aplt. Br. at 35; and (6) Sygma's purported failure to give Antonio an opportunity to explain why she had not called as promised from Zimbabwe. Viewing this evidence in the light most favorable to Antonio does not reveal that Antonio's complaint had anything to do with her termination. Indeed, as Antonio acknowledges, three of the four individuals on the personnel committee "testified that they would rehire Ms. Antonio if she were to apply for a position for which she was qualified." *Id.* at 26 (emphasis omitted). Assuming that all three of those individuals were aware of Antonio's complaint, the logical inference from their willingness to rehire Antonio is that her complaint had no bearing on their termination decision. And

while Johnson testified that she would not rehire Antonio, any connection with Antonio's complaint is purely speculative, given that three months after Antonio complained, Johnson gave Antonio a favorable review and Antonio described Johnson as having "been an excellent source of training and assistance." Aplt. App. at 168. Six more months passed without Johnson taking any action adverse to Antonio. As for Sygma's resort to termination rather than progressive discipline, it is undisputed that the personnel committee was following the Sygma employee handbook, which makes progressive discipline discretionary and warns that job abandonment is a consequence of failing to report to work without notice. Although a retaliatory motive could be inferred from a disparate application of handbook policies to similarly situated employees, *see Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 (8th Cir. 1998), Antonio identifies no such employees.[2] Finally, Antonio testified in deposition that Johnson's supervisor gave her an

---

[2] One employee, Mr. Coffee, was a "no-call no-show" on two occasions, but for only one day each time and "before Sygma [had] adopted its job abandonment policy." Aplee. Br. at 32. Other employees had excessive reported absences, tardiness, or performance-related issues. Another employee, Sergio, was likewise not comparable to Antonio, in that he worked at Sygma's warehouse, under different management than Antonio, and had abandoned his job roughly twenty-two months after Antonio. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233-34 (10th Cir. 2000) (questioning the evidentiary value of contrasting an employer's current disciplinary practices with practices "more than a year and a half" earlier).

-8-

opportunity to discuss "why [she] had been fired," but she declined.  Aplt. App. at 77.

Because Antonio has not identified a triable issue of fact as to whether she was terminated for complaining about Johnson's remark, we conclude that summary judgment was appropriately entered on her retaliation claim.

## II.  Discriminatory Termination—Pretext[3]

Antonio also challenges the district court's ruling that Sygma's reliance on job abandonment was not a pretext for discrimination.

> To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006) (quotations omitted).  We find the evidence in this case insufficient to raise a triable issue regarding pretext.

Most of the same individuals—including Johnson—who decided to terminate Antonio for job abandonment had also hired her twice, fully aware of her race and national origin.  It makes little sense to deduce that these individuals terminated Antonio roughly ten months later because of her race and/or national

---

[3]     Sygma does not contest Antonio's assertion that she can establish a prima facie case of discriminatory termination.  *See Kendrick*, 220 F.3d at 1229 (requiring a discrimination plaintiff to show that (1) she belongs to a protected class, (2) was qualified for her job, (3) despite her qualifications, she was terminated, and (4) the job was not thereafter eliminated).

origin. This premise, commonly known as the "same actor inference," has been recognized in varying degrees by nearly every circuit. *E.g., Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572-73 (6th Cir. 2003); *Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir. 1999); *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442-43 (11th Cir. 1998); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996); *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 512 (1st Cir. 1996); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996); *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 n.6 (3d Cir. 1995); *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992); *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991). We take this opportunity to join our sister circuits and announce that in cases where "the employee was hired and fired by the same person within a relatively short time span,"[4] there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Proud*, 945 F.2d at 798. We emphasize, however, that "[t]he plaintiff still has the opportunity to present countervailing evidence of pretext," *id.*, and that "same actor" evidence gives rise to an inference, rather than a presumption, that no discriminatory animus

---

[4]     The temporal separation between hiring and firing has varied widely in cases applying the same actor inference. *See, e.g.*, *Grady*, 130 F.3d at 561 (eight days); *Jacques*, 96 F.3d at 509 (three months); *Proud*, 945 F.2d at 798 (six months); *Bradley*, 104 F.3d at 269 (eleven months); *Roberts*, 172 F.3d at 452 (one year); *Brown*, 82 F.3d at 658 (four years).

motivated the employer's actions, *see Williams*, 144 F.3d at 1443; *Waldron*, 56 F.3d at 496 n.6.

Antonio's evidence of pretext does not dispel this inference. In addition to her retaliation evidence, Antonio relies on (1) Johnson's remark "[e]quating [b]ad [b]ody [o]dor with [c]ulture," Aplt. Br. at 43; (2) inconsistent deposition testimony as to whether Sygma disciplined Johnson for her remark; and (3) evidence that only a few non-whites and no black managers work at "SYGMA's Denver location (where Ms. Antonio was employed)," *id.* at 50.

Regarding Johnson's "culture" remark, it is undisputed that Antonio suffered from a medical condition that caused increased perspiration and that Antonio wore only perfume to conceal any odor. Nevertheless, assuming that the remark evinces racial animus, it is well-settled that "isolated racial comments are insufficient to establish pretext unless they can somehow be tied to the employment actions disputed in the case at hand." *BCI Coca-Cola*, 450 F.3d at 489 (quotations omitted). The remark was made by only one of the four individuals that decided to terminate Antonio, and no overt racial animus is attributed to any of the other decisionmakers. Further, the remark was temporally remote from the termination. We conclude that no reasonable trier of fact could find pretext in Sygma's reason for terminating Antonio based on Johnson's remark.

As to whether Sygma disciplined Johnson over her remark, Sygma's human resources vice-president testified that she believed Johnson was "sent to [diversity or sensitivity] training," Aplt. App. at 407, whereas Johnson denied being sent to training, *id.* at 309. Sygma concedes the discrepancy, but questions its relevance to pretext. Because Antonio does not explain the pretextual connection between her termination for job abandonment and Johnson's attendance or lack of attendance at training, we do not consider this issue further. *See Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992) (declining to consider issues lacking reasoned argument).

Antonio's evidence concerning the low number of Sygma's minority employees likewise says nothing about why she was terminated. In disparate treatment cases, "overall employment statistics have little bearing on the specific intentions of the employer in making particular [employment] decisions . . . [and] will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Adding Antonio's retaliation evidence does little to cast Sygma's reliance on job abandonment as a pretext for discrimination. For many of the same reasons that we rejected that evidence as indicative of prima facie retaliation, we reject it now for pretext, and conclude that the district court did not err in

-12-

granting summary judgment on Antonio's discrimination claims. *See Branson v.*
*Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (observing that a
plaintiff's "mere conjecture that [her] employer's explanation is a pretext for
intentional discrimination is an insufficient basis for denial of summary
judgment").

### III.  Supplemental State Law Claims

The district court also granted Sygma summary judgment on Antonio's
state law claims.  We conclude that the district court did not err.  The Sygma
employee handbook, which Antonio relies on as the basis for her claims of
promissory estoppel and breach of the good-faith-and-fair-dealing covenant,
unmistakably declares that "[t]he contents of the SYGMA handbook do not
constitute an express or implied contract of employment," that "the handbook is
non-binding and is not intended to create, nor to be construed as a contract
between SYGMA and one or all of its employees," and that "SYGMA retains the
right to terminate [Antonio's] employment at will."  Aplt. App. at 148.  Under
Colorado law, "[s]ummary judgment denying claims based on a handbook is
appropriate if the employer has clearly and conspicuously disclaimed intent to
enter a contract limiting the right to discharge employees."  *Ferrera v. Nielsen*,
799 P.2d 458, 461 (Colo. Ct. App. 1990); *see also George v. Ute Water*
*Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. Ct. App. 1997) (recognizing that

promissory estoppel and contract-based claims fail "if the employer has clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees").  Because Sygma clearly disclaimed any limitation on the at-will relationship, Antonio's state law claims fail as a matter of law.

The judgment of the district court is AFFIRMED.