**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GUY DOMAI,

        Plaintiff-Appellant,

v.

DISCOVER FINANCIAL SERVICES,
Inc., a Delaware corporation,

        Defendant-Appellee.

No. 05-4166

(D. of Utah)

(D.C. No. 2:03-CV-696-K)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **BALDOCK**, Circuit Judges, and **FIGA** District Judge.[**]

Guy Domai brought a Title VII action against his former employer,

Discover Financial Services, alleging discrimination and retaliation based on race

and national origin. He also asserted two causes of action for breach of contract

under state law.[1] The district court granted Discover's motion for summary

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Phillip S. Figa, United States District Judge for the District of Colorado, sitting by designation.

[1] Domai's contract claims are based on the theory that Discover's anti-discrimination policy created an implied contract with its employees. The district court dismissed these claims, relying on precedents that hold an employer's anti-

(continued...)

judgment and Domai appealed.  For substantially the same reasons set forth by the district court, we affirm the grant of summary judgment.

## I. Background

Domai claims he was discriminated against by his former employer, Discover, because he is black and a native of France.  Domai moved to the United States as a teenager and subsequently became a legal permanent resident.  He has lived in Utah for all periods relevant to this lawsuit.

Domai began working for Discover, a credit card company, in January 1997.  In 1999, he was promoted to senior account manager and was eventually transferred to the charge-off department.  The charge-off department handles past-due accounts in the last stage of delinquency before being written-off or transferred to the legal department for collections.

Discover evaluates its employees in the charge-off department by set criteria tracked on a monthly basis.  These criteria include a number of performance measures assessing, among other things, (1) collections, (2) account write offs, and (3) delinquency rates.  One measure used by the company is known as "Pure Flow," an objective measure of how successful an employee is at

---

[1](...continued)
discrimination policy does not create an implied contract where the employer expressly disclaimed any contractual relationship. *See*, *e.g.*, *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991).  Discover's employee handbook expressly disclaimed any contractual relationship with its employees.  We agree with the district court's analysis and, thus, do not separately analyze Domai's state law claims here.

reducing the level of delinquency on customers' accounts. Pure Flow measures workers' success in taking the most delinquent accounts and making them current, and then compares each employee against the department average.

In two evaluations in 2000, Domai received overall satisfactory reviews but repeatedly failed to meet requirements in the area of productivity goals. In 2001, while still receiving an overall rating of "meets requirements," he failed to meet standards in several areas, including productivity and Pure Flow. With respect to Pure Flow, Domai was at 64.29% of his department average in January 2001 and at 48.48% of his department average in August 2001. As a result, Domai received the lowest rating possible on this part of his August 2001 performance evaluation.

In July 2001, Domai's supervisor resigned and was replaced by a new supervisor. Domai claims he was concerned when he learned this person was to be his supervisor. He says he had been told by a friend, a Nigerian who had previously been on that supervisor's team, that she had treated him differently because of his race and nationality. Domai contends he told this to another team leader in the department, Wendy Greene, who told him to give the new supervisor a chance. He also says he mentioned his concerns to Tina Ison, the department manager, who also told him to give the new supervisor a chance. Greene and Ison confirm they each had a conversation with Domai, but they say he never raised the issue of the new supervisor's potential bias.

Later in 2001, Domai was placed on "Job-In-Jeopardy" status for making international calls on a teamleader's phone, a practice not allowed by the company. He does not deny he made the calls. Around this time, he asked to be transferred to another supervisor's team. Discover granted his request.

In November 2001, Domai was put on a performance action plan[2] targeting his poor Pure Flow results, which had been deficient for the previous six months. Discover told him he had to improve his performance within the next 90 days or he could face further discipline up to and including termination.

In December 2001, Domai received a second action plan for his failure to meet minimum requirements for monitor scores, the product of Discover's random monitoring of employee-customer phone calls, over the past three months. In February 2002, Domai was again placed in Job-In-Jeopardy status for his continued deficiency in his Pure Flow performance.

Domai was given a third action plan in March 2002 for his failure to meet minimum requirements for "A/R" scores, a measurement Discover uses to assess what percentage of a delinquent account given to a particular employee is written off. In May 2002, Domai received a fourth action plan in response to his improper calling of cardmembers in violation of Discover's outside dialing regulations.

_____

[2] Performance action plans are a means used by Discover to counsel employees whose performance is lagging and help them get back on track.

In response to these performance problems, Domai sent an email to his team leader acknowledging that personal problems had prevented him from performing at the level Discover expects from its employees. According to his May 5, 2002 email, Domai said:

> It just kills me to see that all the efforts that I have been making, despite my personal problems, have not produced what I wanted them to. I feel bad because I feel like I have let you and also Tina down because you guys have been anything but fair and understanding [sic] to me. It's probably too much to ask at this point but I would like to plead for one last chance which is to have 30 more days (the month May) . . .

R. at 218.

On May 7, 2002, Ison, as the charge-off department manager, recommended Domai be terminated due to his continued inability to meet Pure Flow standards. Discover's regional vice president approved the recommendation and Domai was given the option of resigning, which he accepted.

## II. Standard of Review

We review the district court's entry of summary judgment de novo. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On appeal, we review the record and make reasonable inferences in the light most favorable to

the nonmoving party.  *Mickelson*, 460 F.3d at 1310.  While we view the record in the light most favorable to the non-movant, "that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment."  *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007).

### III. Discussion

Title VII prohibits an employer from terminating any individual because of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or from retaliating against an individual who opposed unlawful discrimination, 42 U.S.C. § 2000e-3(a).

In cases lacking direct evidence of discrimination such as this one, we apply the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must establish a prima facie case of discrimination or retaliation.  If the plaintiff does so, the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse action.  If the defendant succeeds, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).  Only the plaintiff who prevails at each stage will withstand a motion for summary judgment.

We evaluate both of Domai's Title VII claims under this framework.

## A. Title VII Discrimination Claim

To make out a prima facie case of discrimination under Title VII, the plaintiff must show (1) membership in a protected class, (2) an adverse employment action, and (3) disparate treatment among similarly situated employees. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Domai contends that he was singled out and treated differently than other employees in Discover's employee evaluation process because of his race and national origin. The district court concluded that Domai, while establishing the first two elements, faltered at the third. He could not show that he was treated differently from similarly situated employees.

Similarly situated employees are "those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). In examining this question, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* And "even employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (internal citation omitted).

Discover says it fired Domai for his chronic failure to satisfy its objective Pure Flow performance standard. Domai does not dispute that he consistently

failed to meet Pure Flow's minimum requirements—indeed, the record shows that before the first disciplinary action against him, he was below standard for eleven consecutive months. In the face of his poor performance record, Domai argues he was nevertheless treated differently from similarly situated employees in two respects.

First, he presents a list of department employees he claims also failed to meet Pure Flow standards for two or more months yet were never disciplined. But as his manager Tina Ison explained, company policy is to initiate the formal disciplinary process only after an employee misses targets for *four consecutive months*. Under this standard, Domai does not establish that any of the employees on his list qualified for disciplinary action. The data he relies on only tracks performance for *four non-contiguous months* (June–July 2001 and March–April 2002), and not consecutive months. Accordingly, no evidence shows that the listed employees were ripe for discipline under Discover's policy in the first place. Nor does Domai point to any employee with as lengthy a period of below expectation performance who was treated differently. In short, the group he seeks to compare himself to is not "similarly situated," and Domai's evidence cannot support an inference of discrimination based on the Pure Flow data.[3]

_____

[3] Domai's charge of disparate treatment is further belied by evidence on the record that Discover routinely disciplines employees for Pure Flow violations. Moreover, the vast majority of disciplined employees have been white.

Domai's second argument is that employee data on the A/R performance measure (used to assess the percentage of delinquent accounts written off) shows he was disciplined differently from similarly situated employees. Specifically, he presents a list of employees who failed to meet A/R targets for two or more months but were never disciplined. Domai was placed on a performance action plan for his weak performance in this area.[4]

Discover admits six of the employees on Domai's list could have been disciplined for their A/R performance but were not. Nevertheless, Ms. Ison explained the reasons for this—namely that five of the six employees had recently transferred into the charge-off department or had been given someone else's accounts, mitigating circumstances for which Discover regularly allowed extra time to meet targets before implementing an action plan. Domai, on the other hand, was a seasoned veteran of the department at the time his A/R performance was questioned. It is also notable for purposes of this case that the six employees at issue were of five different ethnic backgrounds.

Even assuming Domai had presented a prima facie case of discrimination, Discover has met its burden of showing a legitimate non-discriminatory reason for Domai's progressive discipline and ultimate termination. Having presented a

_____

[4] The relevance of this data is questionable because Discover's rationale for terminating Domai was his deficiency in Pure Flow and not A/R. Nevertheless, a performance action plan is arguably an adverse employment action within the meaning of Title VII and the evidence must be judged in the light most favorable to Domai on a motion for summary judgment.

legitimate reason for its disciplinary actions against Domai, Discover thus shifted "the burden [] back to the employee to show that there is a genuine dispute of material fact as to whether the employer's reason for the challenged action is pretextual and unworthy of belief." *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).

Nothing in the record supports an inference that Domai was singled out because of his race or national origin, or that the company's proffered explanation of Domai's discipline was riddled with "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" such that a "reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

The district court did not err in granting summary judgment on Domai's Title VII discrimination claim.

## B. Title VII Retaliation Claim

Domai also argues that Discover retaliated against him for comments he made about his new supervisor. Specifically, he says he was placed on Job-in-Jeapordy status, and ultimately terminated, because he expressed concerns that his new supervisor was racially biased. To establish a prima facie case of retaliation, Domai must show that (1) he engaged in protected opposition to discrimination, (2) he suffered an adverse action that a reasonable employee would have found

material, and (3) there is a causal nexus between his opposition and the employer's adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, —U.S.—, —, 126 S. Ct. 2405, 2415 (2006); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). An employer can rebut a prima facie showing by demonstrating a legitimate, non-pretextual reason for its conduct. Domai's retaliation claim suffers from the same weaknesses as his discrimination claim.

First of all, it is not obvious that Domai engaged in protected opposition to discrimination. *See* 42 U.S.C. § 2000e-3(a). His charge that his new supervisor was racially biased is based on unsubstantiated hearsay (Domai says a friend who previously worked for the supervisor, told him she was prejudiced) and no admissible evidence in the record supports the conclusion that the supervisor engaged in discriminatory conduct in the past. Moreover, both persons to whom Domai claims to have complained about the new supervisor deny that he raised the issue of racial bias. While a credible complaint about a supervisor's racial animus could constitute protected opposition to discrimination, here we have only the most indirect and cursory claim of *either* bias *or* protected conduct.

Even assuming Domai engaged in protected conduct, he has failed to show a causal nexus between such conduct and the alleged adverse employment actions in this case. Domai claims he was placed in Job-in-Jeapordy status and ultimately terminated for his comments about the new supervisor. First, there is no evidence on the record that Domai's new supervisor was even aware of his comments to

management (i.e., Wendy Greene and Tina Ison).  Second, even if the new supervisor knew about Domai's concerns, that fact establishes nothing unless Domai can link it up to some retaliatory behavior by her.  He has not done so.

Domai alleges two possible retaliatory actions in this case: (1) his placement in Job-in-Jeapordy Status and on various performance action plans, and (2) his ultimate termination.  Each is analyzed in turn.

Job In Jeopardy/Action Plans

Domai admits he made the prohibited international phone calls that prompted his new supervisor to place him on Job-in-Jeopardy status, and this form of discipline was permitted under company policy.  Moreover, he admits to the substandard performance that led Discover to place him on action plans directed at his Pure Flow and A/R numbers.  Since Discover offered a legitimate reason for its disciplinary actions against him, the burden was on Domai to prove that this reason was pretextual.  *Trujillo*, 157 F.3d at 1215.

As the district court observed, Discover gave Domai repeated counseling and opportunities to meet the required standards, which he consistently failed to achieve.  The only evidence in the record that discrimination was "the real reason" for Domai's discipline is his own testimony (based on yet another employee's comments) that a supervisor was racially prejudiced.  But as we have consistently held, unsupported assertions by an employee that an employer's

actions are based on his race are insufficient to avoid summary judgment. *See Simms v. Oklahoma*, 165 F.3d 1321, 1329 (10th Cir. 1999).

Ultimate Termination

Domai's evidence of the requisite causal link between his complaints about his supervisor and his ultimate termination is even more tenuous. Domai was transferred to another team nearly a year before he was terminated, and no evidence suggests that his new team leader somehow retaliated against him for stray comments he made about his previous supervisor months earlier. "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Domai has failed to offer any such evidence.

In sum, the undisputed facts do not suggest that Discover was aware of Domai's complaint against his supervisor or that the supervisor had anything but legitimate reasons for placing him on one of the three action plans to which he was subject. The evidence is overwhelming, moreover, that Domai repeatedly failed to meet the company's objective performance standards. In any event, Domai has failed to show any causal connection between his comments and Discover's ultimate personnel decision.

If that were not enough, Domai even conceded to management that his performance was substandard, and rather than claiming he was being

discriminated against, he promised to do better. Just days before he was terminated, Domai admitted "all the efforts that I have been making . . . have not produced what I wanted them to. I feel bad because I feel like I have let you [] down because you guys have been anything but fair and understanding [sic] to me . . ." R. at 218. While he explains after the fact that he was trying to protect his job with these comments, Domai's own words highlight the absence of probative, material evidence in support of his retaliation claim.

The district court did not err in granting summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court order granting summary judgment to Discover.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge