**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

J. CLARK BUNDREN, M.D.,

      Plaintiff-Appellant,

v.

JOEL PARRIOTT, M.D.,

      Defendant-Appellee.

No. 06-3270
(D.C. No. 05-CV-1040-JTM)
(D. Kan.)

BARRY SCHIFRIN; RICHARD
FIELDS; JOHN FULLERTON; GARY
LUSTGARTEN; THE AMERICAN
COLLEGE OF OBSTETRICIANS
AND GYNECOLOGISTS,

      Amici Curiae.

**ORDER AND JUDGMENT**[*]

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

J. Clark Bundren, M.D., appeals from the district court's order granting summary judgment for Joel Parriott, M.D., on Dr. Bundren's complaint for defamation, tortious interference with prospective business advantage, and tortious interference with contract.[1]  We affirm.

## FACTS

### 1.  Dr. Parriott and the Brandt Suit

Dr. Parriott is an obstetrician and gynecologist with a practice in Salina, Kansas.  In the Spring of 1999, Pamela Brandt, who planned an at-home birth, contacted him to obtain a blood test and a fetal ultrasound.  Dr. Parriott provided these services.  Although a nurse subsequently attended the at-home birth, Dr. Parriott was not present.  Mrs. Brandt's child was born with a prolapsed cord and suffered serious brain injuries.  The nurse was later criminally prosecuted for her role in the at-home birth.  Mrs. Brandt sued Dr. Parriott and the nurse in Kansas state court for malpractice.

Dr. Bundren is a full-time faculty member at the University of Oklahoma College of Medicine, with a teaching speciality in obstetrics and gynecology.  At the time of the Brandt suit, he was also involved in litigation consulting.

---

[1]     Dr. Bundren has not included a separate copy of his complaint in his appendix.  The copy of his complaint we have, attached as an exhibit to Dr. Parriott's summary judgment memorandum, does not contain a cause of action for intentional interference with contract.  Aplt. App., Vol. I, at 155-65.  It does contain a cause of action for intentional infliction of emotional distress, which neither party mentions in this appeal.

Mrs. Brandt designated him as a medical expert in her malpractice action against Dr. Parriott.

On January 30, 2002, Dr. Bundren prepared an expert report that Mrs. Brandt's attorneys submitted to the Kansas court. In this report, he stated:

> It is my opinion, to a high degree of medical probability, that Doctor Parriott failed to adequately assess Pamela Brandt and warn her of her risks for injury to herself or her child . . . if she were to undertake a home delivery. Had Doctor Parriott warned her of these risks, a home delivery would not have been undertaken and the injury to the child would have been prevented.

Aplt. App., Vol. II, at 246. Dr. Bundren later gave a deposition in which he reiterated his view that Dr. Parriott had departed from the standard of care applicable to an obstetrician under the circumstances.

Both Dr. Parriott and the nurse settled with Mrs. Brandt. Dr. Parriott paid her $10,000. He did not, however, admit liability. His agreement with her specified that the payment was designed only to reimburse her attorneys for incurred expenses.

**2. The ACOG Complaint**

At all times relevant to this appeal, Drs. Parriott and Bundren were fellows of the American College of Obstetricians and Gynecologists ("ACOG"). ACOG has been critical of what it views as the lack of adequate standards for expert witness testimony. Its Code of Professional Conduct includes rules governing

expert testimony, and it has prepared an Expert Witness Affirmation for fellows to follow when providing expert evidence or testimony.

In accordance with its bylaws, ACOG has adopted a set of procedures ("Procedures") for handling complaints against fellows, and for imposing disciplinary sanctions including termination of fellowship in connection with such complaints. Complaints before ACOG's grievance committee are confidential, to be discussed only with the complainant, the members of the committee, and the respondent.

On February 8, 2004, Dr. Parriott filed a complaint with ACOG against Dr. Bundren. Dr. Parriott alleged that "Dr. Bundren's testimony [in the Brandt suit] was in violation of the principles outlined in [ACOG's] Expert Witness Affirmation." Aplt. App., Vol. I, at 101. Dr. Parriott completed a pre-printed form ACOG required to accompany the complaint. The instructions printed on the complaint form specified that ACOG's Grievance Committee would not consider "[m]atters that involve review of an expert witness' testimony, except in cases of factual misrepresentation and perjury on fact-based issues." *Id.* at 108. The form required Dr. Parriott to respond to several questions about the complaint, including the following:

> Does this complaint involve a factual misrepresentation and/or perjury on fact-based issues as part of an expert witness' testimony? Yes or No (Circle one)

*Id.* at 109. Dr. Parriott circled "Yes." *Id.*

ACOG accepted the complaint for review and notified Dr. Bundren of the pendency of the complaint against him. He submitted several inquiries to ACOG about members of the prospective hearing panel. Finding the responses to his queries unsatisfactory, and convinced that the ACOG forum would be biased against him, Dr. Bundren filed the present action in federal district court.

### 3. Federal Litigation

ACOG's Procedures provide that if a complaint submitted to it later becomes the subject of litigation, the complaint will be dismissed. Accordingly, ACOG dismissed Dr. Parriott's complaint after this suit was filed. Dr. Bundren later resigned from ACOG.

In his federal complaint, Dr. Bundren alleged that Dr. Parriott had accused him of "committ[ing] the crime of perjury." *Id.* at 161. He further charged that Dr. Parriott filed the ACOG complaint "to retaliate against witness Bundren for his privileged truthful testimony." *Id.* His libel per se claim asserted that "Dr. Parriott stated that [Dr. Bundren] had committed a crime, that crime being perjury. This statement was libel per se and requires no pleading or proof of special damages." *Id.* at 162.[2] Dr. Bundren further charged that Dr. Parriott "has made false accusations against [Dr. Bundren] with the intent to injure

---

[2] This appears to be an inaccurate statement of Kansas law. *See Polson v. Davis*, 895 F.2d 705, 708 (10th Cir. 1990) (stating Kansas no longer recognizes defamation per se claims).

-5-

[Dr. Bundren] in his prospective advantage of being employed as an expert witness in future litigation." *Id.* at 163.

In granting summary judgment for Dr. Parriott on the defamation claim, the district court reasoned that (1) Dr. Parriott never actually accused Dr. Bundren of perjury in the ACOG complaint; (2) the ACOG complaint contained Dr. Parriott's opinions, which were not actionable under Kansas law; (3) the allegations in the ACOG complaint were substantially true; (4) there was no evidence that the ACOG complaint was communicated with the intent of harming Dr. Bundren's reputation; and (5) there was no evidence that Dr. Bundren's reputation was actually harmed. On the tortious interference with contract and prospective business advantage claims, the district court reasoned that there was no evidence that Dr. Parriott knew of Dr. Bundren's consulting business or his relationships with lawyers, or that Dr. Parriott sought intentionally or maliciously to harm Dr. Bundren's existing contractual or prospective advantages. Finally, the district court found Dr. Parriott immune from damages under the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101 - 11152 (HCQIA), because the ACOG complaint was a "professional review action" within the meaning of that statute. *See id.* §§ 11111(a)(1), 11112(a).

## ANALYSIS

### 1. Standard of Review

"We review de novo the district court's summary judgment decision, applying the same standard as the district court." *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). Finally, we may affirm on any basis supported by the record, even though not relied on by the district court. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 n.17 (10th Cir. 2004).

### 2. HCQIA Immunity

Because HCQIA immunity, if established, would affect all of Dr. Bundren's claims, we address it first. The HCQIA "provide[s] qualified immunity from damages actions for hospitals, doctors and others who participate in professional peer review proceedings." *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1333 (10th Cir. 1996). "[A] peer review participant is immune from private damage claims stemming from the peer review action" if the peer review action

meets certain standards specified by Congress. *Id.* For immunity to apply, the review action must be taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a).[3]

The district court concluded that "[Dr.] Parriott is not liable in damages for submitting his ACOG complaint, because the organization's grievance procedure is a 'professional review action' within the meaning of the Act." Aplt. App., Vol. II, at 448. This analysis, however, is insufficient to justify an award of qualified

---

[3] HCQIA provides an additional protection for those who supply information to a professional review body. It states that

> no person (whether as a witness or otherwise) providing information to a professional review body regarding the competence or professional conduct of a physician shall be held, by reason of having provided such information, to be liable in damages under any law of the United States or of any State (or political subdivision thereof) unless such information is false and the person providing it knew that such information was false.

*Id.* § 11111(a)(2).

Because Dr. Parriott does not rely on this basis for his assertion of immunity, we do not analyze its applicability.

immunity under HCQIA. While the district court identified the four qualifying factors in § 11112(a) in its decision, it made no further finding concerning whether the ACOG proceeding satisfied these factors. The district court in effect converted HCQIA's qualified immunity into an absolute immunity for the ACOG participants, in violation of the statutory requirements.

HCQIA does provide that "[a] professional review action shall be presumed to have met the [qualifying] standards . . . unless the presumption is rebutted by a preponderance of the evidence." 42 U.S.C. § 11112(a). But Dr. Bundren both attacked the fairness of the ACOG proceeding, and contended that it was not undertaken in the furtherance of quality health care. Given these attacks on the ACOG proceeding, the district court should have determined whether Dr. Bundren had overcome the presumption that the § 11112(a) factors were met. It did not do so.

We could perhaps decide the § 11112(a) issue in the first instance as part of our de novo review of summary judgment. Rather than attempt to resolve these difficult issues for the first time on appeal, however, we will turn instead to the primary basis for the district court's summary judgment disposition: the merits of Dr. Bundren's claims. We affirm summary judgment on the merits.

### 3. Defamation Claim

The elements of the tort of defamation in Kansas are: "false and defamatory words, communicated to a third party, which result in harm to the reputation of the person defamed." *Hall v. Kan. Farm Bureau*, 50 P.3d 495, 504 (Kan. 2002). The district court found that Dr. Bundren failed to satisfy any of the elements of his defamation claim. It concluded that Dr. Parriott's statements were substantially true. We need not go that far. Dr. Bundren's failure to demonstrate the existence of a genuine and material fact issue concerning any one of the essential elements of his claim is sufficient to justify summary judgment against him. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) ("'[W]here the non moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). We affirm summary judgment because Dr. Bundren failed to show that Dr. Parriott made false and defamatory statements about him.

#### a. Accusation of Perjury

The district court concluded that Dr. Parriott did not accuse Dr. Bundren of perjury merely by circling the word "Yes" on a form that referred to "factual misrepresentation *and/or perjury*." Aplt. App., Vol. I, at 109 (emphasis added).

We agree. Contrary to Dr. Bundren's position, a witness who makes a factual misrepresentation under oath does not necessary commit perjury. Perjury includes "*intentionally, knowingly and falsely* . . . [s]wearing, testifying, affirming, declaring or subscribing *to any material fact* upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public or other officer authorized to administer oaths." Kan. Stat. Ann. § 21-3805(a)(1) (emphasis added). To commit perjury, a witness must know or believe that his own testimony is false; his mere misinterpretation of the facts is insufficient. *Thompson v. State*, No. 92,753, 2005 WL 2950410, at *4 (Kan. Ct. App. Nov. 4, 2005) (unpublished).

Dr. Parriott's complaint charged Dr. Bundren with: (1) giving testimony based on an incomplete review of the available facts; (2) giving testimony outside his area of clinical expertise; (3) giving testimony regarding medical facts that was inaccurate and misleading; and (4) failing to demonstrate a causal relationship between the alleged substandard treatment and the medical outcome. The ACOG complaint was replete with opinionate language that suggested sloppiness, bias, or a rush to judgment on Dr. Bundren's part, but it did not charge him with perjury: i.e., intentionally, knowingly, and falsely swearing to a material fact.[4]

---

[4] The complaint accused Dr. Bundren of "an incomplete review of the facts
(continued...)

Dr. Bundren also argues that Dr. Parriott accused him of perjury because

4(...continued)
available to him," of conducting a "selective. . . review [of] the testimony of plaintiffs . . . that supported his preformed conclusions," of concluding that a complete review of plaintiffs' testimony was unnecessary, and of ignoring "testimony from Dr. Parriott's deposition . . . that directly contradicted his wrongful conclusion." Aplt. App., Vol. I, at 103.

The complaint further charged that Dr. Bundren "ignored *or was unaware of* an avalanche of information that contradicted his position." *Id.* (emphasis added). It asserted that he proceeded on an erroneous premise without relevant clinical experience and without awareness of appropriate standards or protocol. *Id.* at 104. It charged him with medical misstatements, including the opinions he expressed concerning whether a "50 gram glucola screening test must be given with special consideration to the patient's pretest diet," *id.* at 105; whether "a discrepancy in a patient's fundal height as it relates to gestational age [is] an independent risk factor for the patient despite that discrepancy being explained by the patient's sonogram," *id.*; whether "the plaintiff's failure to gain weight over a ten-week time frame put her at high risk," *id.* at 106; and whether "the patient's age of 40 in the absence of other comorbidities placed her at high risk," *id.*

Finally, the complaint contained this opinion-based conclusion:

Dr. Bundren is a plaintiff's expert. He has testified almost exclusively on behalf of the plaintiff in a significant number of malpractice proceedings. In this case, his testimony is based not on a "complete and objective" evaluation of all the information available to him. Rather, it is an opinion crafted to favor the plaintiff where information is selectively chosen to support an already predetermined and erroneous conclusion. His goal is not to facilitate a "just resolution to the proceeding", but to act as a medical mouthpiece for the plaintiff. He opines outside his area of clinical experience and misrepresents his clinical opinion as the standard of care. Further, he often bases this opinion on medical misinformation. At the very least, he fails to recognize that actions or opinions that differ from his still fall within the standard of care. I would ask that the Grievance Committee find Dr. Bundren's testimony in violation of the Code of Ethics regarding expert witness testimony.

*Id.* at 107.

the instructions accompanying the complaint form required that a complaint involving expert witness testimony be entertained only in cases of "factual misrepresentation *and* perjury on fact-based issues." Aplt. App., Vol. I, at 108 (emphasis added). The use of the word "and" here cannot reasonably be understood to require that such a complaint allege *both* perjury *and* factual misrepresentation. Rather, the only logical reading is that it is merely a way of stating that either perjury or factual misrepresentation is sufficient. In any event, taken as a whole, Dr. Parriott's complaint itself does not accuse Dr. Bundren of perjury.

### b. Statements of Opinion

The complaint was also non-defamatory to the extent it presented Dr. Parriott's *opinion* of Dr. Bundren's conduct, with the factual basis for that opinion fully disclosed. A statement of opinion "is actionable only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion." Restatement (Second) of Torts § 566 (1977).[5] In other words, provided that the facts underlying an opinion are fully disclosed and those facts are themselves not false and defamatory, the opinion is not actionable. *See id.* cmt. "c." Most of

---

[5] Although the Kansas Courts have not expressly adopted § 566, they have adopted or applied other Restatement pronouncements pertaining to defamation law, *see, e.g., Hein v. Lacy*, 616 P.2d 277, 284 (Kan. 1980) (applying Restatement (Second) of Torts §§ 580A and 581A), and we believe the Kansas Supreme Court would apply § 566 if presented with this question.

Dr. Parriott's ACOG complaint consists of statement of his opinions concerning the quality and reliability of Dr. Bundren's expert testimony. The factual basis for those opinions is disclosed in the complaint.

The question remains whether the factual statements underlying Dr. Parriott's opinion are themselves false and defamatory. We need not go so far as the district court, which determined that the statements were substantially true. Rather, we simply note that while Dr. Parriott's summary judgment memorandum contained a thorough discussion of the factual statements in his ACOG complaint and the evidence in support of them, *see* Aplt. App., Vol. I, at 23-28, Dr. Bundren's response was entirely devoid of references to the evidence to controvert the statements made in Dr. Parriott's complaint and cited in support of summary judgment, s*ee id.*, Vol. II, at 278-82. Moreover, in 71 pages of appellate briefing, Dr. Bundren has failed to identify a single piece of evidence in the record that would support his claim that Dr. Parriott made materially false and defamatory factual statements in his ACOG complaint.[6] This being the case, we

_____

[6] On page 20 of his reply brief, Dr. Bundren does finally contest a potentially defamatory factual statement contained in Dr. Parriott's ACOG complaint. He asserts that Dr. Parriott's assertion that Dr. Bundren misstated the reason for one of Mrs. Brandt's visits to Dr. Parriott's office is inconsistent with two statements in Dr. Parriott's treatment notes. Dr. Bundren mentions this omission in support of his argument that a jury rather than ACOG should decide issues of credibility between the two doctors. But he characterizes this as a "seemingly petty factual question" *see* Aplt. Reply Br. at 20, that involves "nothing more than complaints about credibility issues," *id.* at 19-20. This argument fails to demonstrate a
(continued...)

-14-

cannot conclude that there exists a genuine issue of fact concerning whether the statements are false. It is not our task to comb through the summary judgment record for evidence to support Dr. Bundren's position. *See, e.g., Fernandez v. Mora-San Miguel Elec. Co-op, Inc.*, 462 F.3d 1244, 1252-53 (10th Cir. 2006).

## 4. Intentional Interference Claims

As the district court noted, to prove a claim of intentional interference with contract or with prospective business advantage, Kansas law requires the plaintiff to show that the alleged wrongdoer sought intentionally or maliciously to harm his existing contractual or prospective business advantage. *See Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 150 (Kan. 2003) (stating elements of tortious interference with contract); *Turner v. Haliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986) (stating elements of tortious interference with prospective business advantage). The district court determined that Dr. Bundren had failed to establish the requisite intent to interfere with Dr. Bundren's expert witness practice, because the ACOG complaint Dr. Parriott pursued involved a confidential process. Dr. Bundren responds that Dr. Parriott did a poor job of redacting the patient's name in the materials submitted to ACOG. Aplt. Opening Br. at 30. He fails to discuss how this shows malice against Dr. Bundren.

---

[6](...continued)
genuine issue of material fact concerning Dr. Bundren's defamation claim.

Dr. Bundren also asserts that malice is demonstrated because Dr. Parriott failed to inform ACOG in his complaint that (1) Dr. Parriott had listed Dr. Bundren on his own witness list in the state court suit, and (2) the release Dr. Parriott signed with the Brandts and their attorneys in the state court suit implicitly released Dr. Bundren, since he was an agent of the Brandts' attorneys. These allegations, even if true, fail to demonstrate that Dr. Parriott filed the ACOG complaint with a malicious intent to interfere with Dr. Bundren's expert witness practice.

**5. Denial of Dr. Bundren's Motion for Summary Judgment**

In addition to granting Dr. Parriott's motion for summary judgment, the district court denied Bundren's cross-motion. It stated:

> [T]he court can under no circumstances grant the motion for summary judgment of the plaintiff. That motion is grounded on a narrative of facts which is wholly free from any specific citations to the evidence, disregarding the requirements of D.Kan.R. 56.1(d). Further, much of the evidence appended to plaintiff's motion takes the form of various articles and other documentary exhibits which are offered without verification, foundation, or demonstration that the evidence is grounded on personal knowledge rather than hearsay. Accordingly, there is no factual grounding for plaintiff's motion.

Aplt. App., Vol. II, at 450.

Dr. Bundren's only argument in opposition to the district court's reasoning is that his response to Dr. Parriott's motion for summary judgment was similarly deficient, but the district court did not exclude it. Aplt. Opening Br. at 6. This hardly demonstrates that the district court abused its discretion in applying the

-16-

local rule to deny Dr. Bundren's summary judgment motion or that it erred in excluding the exhibits.

### 6. Motion to Strike Amicus Brief and Portions of Appellant's Brief

Finally, Dr. Parriott has moved to strike portions of Dr. Bundren's brief and the brief of amici who support his position in this matter. He contends that Dr. Bundren and the amici have advanced arguments and/or cited to facts not contained in the district court record, and that Dr. Bundren has failed to provide adequate record references in his brief.

We agree with Dr. Parriott that Dr. Bundren's brief is not adequately supported by references to the district court record. We caution counsel to provide adequate references to facts developed in the district court record. *See* Fed. R. App. P. 28(a)(7), (e). Particularly in light of our disposition of this case, however, we find it unnecessary to strike portions of Dr. Bundren's brief.

With regard to the brief of amici, a certain leeway may be appropriate for citation to materials such as "testimony in Congressional hearings, and citations to information on various websites" in support of amici's policy-based arguments. *See* Motion to Strike, at 4. In any event, the brief concerns only the HCQIA issue, which we have not found it necessary to resolve on the merits.

The judgment of the district court is AFFIRMED.  Appellee's motion to strike is denied.

Entered for the Court


Wade Brorby
Senior Circuit Judge
