**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

BRANDON JOHNSON,

    Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
TRANSPORTATION; KEVIN LOWE,
Video Branch Manager; BART
VLEUGELS, Video Branch Manager,

    Defendants - Appellees.

No. 15-6166
(D.C. No. 5:14-CV-00945-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

    Brandon Johnson worked briefly as a video production specialist for the

Oklahoma Department of Transportation (ODOT). But Mr. Johnson's tenure

immediately proved a rocky one and he was let go less than five months after he was

hired. Convinced that he'd been fired because of his race, Mr. Johnson sued ODOT

and his supervisors under Title VII and 42 U.S.C. § 1983. For their part, the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

defendants answered that they dismissed Mr. Johnson because he was a poor employee. On the defendants' motion for summary judgment, the district court analyzed the case through the prism of the *McDonnell Douglas* framework and held that Mr. Johnson failed to establish either a prima facie case of discrimination or that the defendants' proffered reasons for his dismissal were pretextual. The court rejected, as well, Mr. Johnson's claim of retaliation under Title VII and his efforts to hold the defendants liable under § 1983.

Now on appeal, Mr. Johnson first takes issue with the district court's rejection of his Title VII discrimination claim. While accepting the use of the *McDonnell Douglas* framework, he argues that, contrary to the district court's judgment, he carried his burden at both the prima facie and pretext stages. But, respectfully, we cannot agree. Because Mr. Johnson was hired and fired in short order by the same individuals, this court applies a "strong inference" that the defendants' explanation that he was dismissed for poor performance is true and not pretextual. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006). After all, it would make "little sense" for an employer to hire an employee with full awareness of his race only to fire him a short time later because of it. *Id.*

Neither do we see evidence in this record that might rebut our usual inference and instead see much to reinforce it. For example, Mr. Johnson charges that his bosses were imbued with racial intentions because they used the term "walk-around"

on the job and that term historically held a racial connotation.[1]  But Mr. Johnson does not dispute that this term is today commonly used in his industry to describe a 360-degree walking inspection of a vehicle, that his employers used the term in that context, and that they made sure Mr. Johnson wasn't offended by the term before asking him to use it too.  Notably, too, ODOT points to considerable and largely unrebutted testimony showing that the decision to fire Mr. Johnson was the culmination of a long-running dialogue with human resources concerning disruptive workplace behavior:  several employees recounted at length Mr. Johnson's contentious battles with ODOT over compensation, the many times he refused to follow instructions, and the frustration and costs he imposed on the video production staff.

Beyond Mr. Johnson's Title VII discrimination claim lies his Title VII retaliation claim.  Before the district court, Mr. Johnson contended that he was fired in retaliation for filing a civil rights complaint with an ODOT official.  But as the district court noted, Mr. Johnson filed his complaint *after* the defendants decided to terminate his employment so the complaint could not have been the cause of his termination.  Now on appeal, Mr. Johnson seeks to disassociate himself from this retaliation theory and offer new ones in its place.  But by failing to first present these theories to the district court, Mr. Johnson has not properly preserved them for

---

[1]  Webster's notes that historically a "walk-around" was "a number in a blackface minstrel show in which all the performers dance around the stage one at a time often with each one doing his specialty on coming to the center of the stage." Webster's Third New International Dictionary 2571 (2002).

3

appellate review. Neither does he suggest how the district court's failure to approve of these forfeited theories might have amounted to plain error and a miscarriage of justice. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

In addition to seeking to establish their liability through Title VII, Mr. Johnson seeks to hold ODOT and the individual defendants (his former supervisors) liable for damages under 42 U.S.C. § 1983. The problem, though, is that ODOT is a state agency and Mr. Johnson's complaint makes clear that he is suing his supervisors in their official capacities only. *See* R. Doc. 1 (Complaint) at 2 ("[E]ach of the Defendants sued herein was the agent and employee of each of the remaining Defendants *and was at all times acting within the purpose and scope of such agency and employment*." (emphasis added)); *see also Sanderfer v. Nichols*, 62 F.3d 151, 152 n.1 (6th Cir. 1995) ("[O]rdinarily, when the complaint in a § 1983 action does not specify that a defendant is sued in her individual capacity, we have held that such a defendant has been sued in her official capacity only."); *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (same). And, of course, a state and its employees acting in their official capacities generally enjoy sovereign immunity from claims arising under § 1983. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180-81 (10th Cir. 2002). While that immunity can be waived by the State of Oklahoma or abrogated by Congress, Mr. Johnson has given us no cause to believe either possibility has been realized here. The closest he comes is suggesting that ODOT may not invoke immunity because it previously accepted federal financial assistance. But this argument again wasn't presented to the district court and again Mr. Johnson doesn't

4

seek to explain how that court's failure to consider it constitutes plain error and a miscarriage of injustice.  *See Richison*, 634 F.3d at 1130-31.

That leaves Mr. Johnson's claim of bias.  Mr. Johnson first suggests that the fact the district court ruled against him is evidence of its disqualifying bias.  But the Supreme Court has long rejected the idea that an adverse ruling suffices to show impermissible judicial bias.  *See, e.g.*, *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).  Alternatively, Mr. Johnson suggests the district court's bias can be seen in certain comments it offered in the course of adjudicating his claims.  But critical or disapproving judicial remarks "ordinarily do not support a bias" challenge unless "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.  And having carefully reviewed the challenged remarks, we see nothing in them suggesting so much.

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge